UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

M.M., *individually and on behalf of B.M.,*
*a child with a disability*,

Plaintiff,

– *against* –

NEW YORK CITY DEPARTMENT OF
EDUCATION,

Defendant.

**OPINION & ORDER**

20 Civ. 6915 (ER)

Ramos, D.J.:

M.M., the mother of B.M., a minor with a disability, brings this action pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415 *et seq*., to secure attorneys' fees and costs following an impartial hearing officer's ("IHO") decision in her favor. Before the Court is M.M.'s motion for summary judgment, seeking attorneys' fees and costs for work performed by her attorneys, the Cuddy Law Firm, PLLC (the "Firm"). For the reasons set forth below, the motion is GRANTED, subject to the modifications described herein.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.  Underlying Administrative Proceeding

The following facts are undisputed for purposes of summary judgment except as otherwise stated.

B.M. is a child with a disability. Doc. 19 (Plaintiff's Rule 56.1 Statement) ¶ 1. M.M. is the parent of B.M. Doc. 16-4 (Findings of Fact and Decision) at 2. On March 1, 2019, M.M. filed a complaint requesting an administrative due process hearing against the Department of Education ("DOE"). Doc. 19 ¶ 3. The complaint alleged that the DOE had failed to appropriately evaluate B.M. and implement the individualized educational programming that he required. Doc. 16-1 (Due Process Complaint). Accordingly, M.M. sought relief based on the DOE's alleged failure to provide B.M. with a free appropriate public education ("FAPE") for

the 2016–17, 2017–18, and 2018–19 school years.  Doc. 20 (Plaintiff's Memorandum of Law in Support of Summary Judgment) at 2; Doc. 25 (Defendant's Response in Opposition to Summary Judgment) at 4.  On March 8, 2019, the parties engaged in a resolution meeting that resulted in the execution of a partial resolution agreement on April 1, 2019.  Doc. 20 at 3; Doc. 27 (Declaration of Roslyn Roth) ¶ 7.  The partial resolution agreement stipulated that the DOE would perform occupational therapy, speech/language, assistive technology, and functional behavior evaluations.  Doc. 16-2 (Partial Resolution Agreement).  The agreement further stipulated that the DOE would design a Behavior Intervention Plan if warranted, and directed M.M. to provide the DOE with an updated medical physical for B.M.  *Id.*  The parties were not, however, able to reach an agreement on the independent neuropsychological evaluation M.M. had requested on behalf of B.M.  *Id.*  M.M. now alleges that, by refusing to provide the independent neuropsychological evaluation, the DOE unreasonably protracted the proceedings. Doc. 20 at 6.

An administrative due process hearing was held to resolve the remaining disputed issues on August 6, 2019 and September 13, 2019.  Doc. 1 (Complaint) ¶ 10; Doc. 10 (Answer to Complaint) ¶ 10.  Vanessa M. Gronbach was appointed as the IHO.  Doc. 19 ¶ 5.  At the beginning of the first day of the hearing, the DOE informed M.M. that it would not present a case in its defense.  Doc. 25 at 9; Doc. 20 at 13.   The two hearings ultimately took a combined one hour and eighteen minutes to complete.  Doc. 25 at 2.[1]

The IHO issued a Findings of Fact and Decision ("FOFD") in favor of M.M. on January 1, 2020.  Doc. 1 ¶ 20; Doc. 10 ¶ 20.  The FOFD found that the DOE had failed to provide a FAPE to B.M. for the three school years at issue and that B.M. was eligible for compensatory academic services.  Doc. 16-4 at 9–10.  Based on this finding, the IHO ordered the DOE to pay for an independent neuropsychological evaluation for B.M., 53 hours of counseling services provided by a provider of M.M.'s choosing, and 505 hours of academic services.  *Id.* at 10.  The

---

[1] M.M. does not contest this allegation in its Reply to Defendant's Response, Doc. 29.

FOFD further provided that M.M. would be reimbursed for previously incurred out-of-pocket, co-pay, and deductible expenses, and ordered the DOE to complete a functional behavior assessment and speech language, occupational therapy, and assistive technology evaluations within three weeks of the order.  *Id*. at 10–11.

According to the billing statements it has submitted to the Court, the Firm billed a total of 125.20 hours in connection with these underlying administrative proceedings.  Doc. 17-4 (Declaration of Andrew K. Cuddy).[2]  In addition, the Firm requests $1,362.98 in total expenses. The Firm has submitted a billing statement that lists the total cost of the administrative proceeding at $46,431.73.

On August 17, 2020, M.M. sent the DOE a request for attorneys' fees incurred pursuant to the fee-shifting provision of IDEA, 20 U.S.C. § 1415(i)(3).  Doc. 1 ¶¶ 21, 36; Doc. 10 ¶¶ 21, 36.

### B.  Action to Recover Attorneys' Fees in Federal Court

M.M. filed this complaint on August 26, 2020 in order to compel the DOE to pay reasonable attorneys' fees and costs pursuant to 20 U.S.C. § 1415(i)(3).  *See* Doc. 1.  The DOE answered the complaint on December 17, 2020.  *See* Doc. 10.  On September 20, 2021, M.M. filed the instant motion for summary judgment.  Doc. 13.[3]  The DOE does not dispute that, based on the findings of the IHO, M.M. was the prevailing party in the administrative proceeding and is entitled to attorneys' fees and costs.  Doc. 25 at 1.  However, the DOE argues that the rate sought and the number of hours billed, as well as the costs, are unreasonable.  *Id*. After discretionary reductions, the Firm has billed 125.20 hours in connection with the underlying administrative proceedings, as well as 66.50 hours in connection with this federal action, resulting in a combined $72,009.23 in overall fees, costs, and expenses.  *See infra* n.4.

---

[2] This number represents the total billable hours incurred in connection with the underlying administrative proceedings, minus discretionary reductions made by the Firm.

[3] In opposition, the DOE submitted a declaration from Emily Goldman.  Doc. 26.  M.M. argues that, because Emily Goldman did not execute the document herself, the declaration should be stricken for failure to comply with filing requirements.  The Court need not address this argument, as it did not rely on the declaration.

## II.     LEGAL STANDARD

### A.  Motion for Summary Judgment

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a).  "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)).  A fact is "material" if it might affect the outcome of the litigation under the governing law.  *Id*.  The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party meets its burden, "the non-moving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment."  *Saenger v. Montefiore Med. Ctr*., 706 F. Supp. 2d 494, 504 (S.D.N.Y. 2010) (internal quotation marks omitted) (citing *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008)).

In deciding a motion for summary judgment, the Court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant."  *Brod v. Omya, Inc*., 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp*., 368 F.3d 123, 126 (2d Cir. 2004)) (internal quotation marks omitted).  However, in opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions, conjecture, or surmise.  *Goenaga v. March of Dimes Birth Defects Found*., 51 F.3d 14, 18 (2d Cir. 1995).  To defeat a motion for summary judgment, "the non-moving party must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor."  *Senno*, 812 F. Supp. 2d at 467–68 (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 256–57 (1986)).

### B.  Reasonable Attorneys' Fees

"In any action or proceeding brought under [§ 1415], the court, in its discretion, may award reasonable attorneys' fees as part of the costs to a prevailing party who is the parent of a

4

child with a disability." 20 U.S.C. § 1415(i)(3)(B)(i)(I).  "A plaintiff prevails when actual relief on the merits of [their] claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *K.L. v. Warwick Valley Cent. Sch. Dist.*, 584 F. App'x 17, 18 (2d Cir. 2014) (internal citation and quotation marks omitted).

"Reasonable attorneys' fees under the IDEA are calculated using the lodestar method, whereby an attorney fee award is derived by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." *Streck v. Bd. of Educ.*, 408 F. App'x 411, 415–16 (2d Cir. 2010) (citations and quotation marks omitted).  In determining whether an hourly rate is reasonable, courts primarily consider the prevailing market rates in the community for comparable legal services. *See* § 1415(i)(3)(C) (providing that attorneys' fees "shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished").  The prevailing market rate has been characterized as "the rate a paying client would be willing to pay . . . bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 190 (2d Cir. 2007).  Courts also consider the 12 factors discussed in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974):

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Lilly v. City of New York*, 934 F.3d 222, 228 (2d Cir. 2019).  Because "the determination of fees should not result in a second major litigation," *Fox v. Vice*, 563 U.S. 826, 838 (2011), courts may consider the *Johnson* factors holistically rather than applying each factor individually to

the facts of the case. *V.W. v. New York City Dep't of Educ.*, No. 20 Civ. 2376 (RA), 2022 WL 37052, at *3 (S.D.N.Y. Jan. 4, 2022) (internal citation omitted). "A district court need not recite and make separate findings as to all twelve Johnson factors, provided that it takes each into account in setting the attorneys' fee award." *H.A. v. New York City Dep't of Educ.*, No. 20 Civ. 10785 (PAE), 2022 WL 580772, at *8 (S.D.N.Y. Feb. 25, 2022) (quoting *E.F. ex rel. N.R. v. New York City Dep't of Educ.*, No. 11 Civ. 5243 (GBD) (FM), 2014 WL 1092847, at *3 (S.D.N.Y. Mar. 17, 2014)).

"[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). The Second Circuit has observed that "[r]ecycling rates awarded in prior cases without considering whether they continue to prevail may create disparity between compensation available under [§ 1415] and compensation available in the marketplace," which would "undermine[ ] [the statute's] central purpose of attracting competent counsel to public interest litigation." *Farbotko v. Clinton County*, 433 F.3d 204, 209 (2d Cir. 2005). Accordingly, while a court may consider rates awarded in prior similar cases and its "familiarity with the rates prevailing in the district," it should also "evaluat[e] . . . [the] evidence proffered by the parties." *Id*.

## III.   DISCUSSION

### A.  Unreasonable Protraction

M.M. argues that its billed time and hourly rates should not be reduced because the DOE "unreasonably protracted the final resolution of the action" under Section 1415(i)(3)(G). Specifically, M.M. argues that the DOE unreasonably protracted the proceedings by failing to satisfy her requests for settlement.

The undisputed facts of this case, however, indicate that the DOE did not unreasonably protract the proceedings. On March 1, 2019, M.M. filed a demand for a due process hearing. Doc. 16-1. Then, on April 1, 2019, M.M. and the DOE entered into a partial resolution agreement, wherein the DOE agreed to most of M.M.'s requests. Doc. 16-2. To resolve the

remaining issues between the parties, hearings were held on August 6, 2019 and September 13, 2019.  Doc. 16-4 at 1.

M.M. alleges that, on February 12, 2019, several weeks before M.M. filed the due process complaint, her counsel Justin Coretti submitted a request that the DOE perform an independent evaluation of B.M.  Doc. 16 ¶ 16.  According to M.M., the DOE's "standard operating procedures manual" holds that the DOE must either grant or deny such a request within 10 days of receipt.  Doc. 20 at 6.  M.M. alleges that the DOE did not respond to this request.  Doc. 16 ¶ 17.  The DOE does not address this allegation, and M.M. argues that the failure of the DOE to either grant or deny its request constitutes "unreasonable protraction" within the meaning of Section 1415(i)(3)(G).  Doc. 20 at 6.  Failing to respond to pre- and post-complaint settlement demands does not, however, amount to unreasonable protraction.  *M.D. v. New York City Dep't of Educ.*, No. 20 Civ. 6060 (LGS), 2021 WL 3030053, at *6 (S.D.N.Y. July 16, 2021); *H.C. v. New York City Dep't of Educ.*, No. 20 Civ. 844 (JLC), 2021 WL 2471195, at *8 (S.D.N.Y June 17, 2021) (holding that the failure to offer substantive relief at a resolution session does not constitute unreasonable protraction).  So long as it does not make the proceedings "longer than what ordinarily would be needed," a delay will not constitute unreasonable protraction.  *M.H. v. New York City Dep't of Educ.*, No. 20 Civ. 1923 (LJL), 2021 WL 4804031, at *25 (S.D.N.Y. Oct. 13, 2021).  Indeed, even "disorganization and unpreparedness" do not necessarily constitute unreasonable protraction.  *Id.*; *see also S.J. v. New York City Dep't of Educ.*, No. 20 Civ. 1922 (LGS) (SDA), 2020 WL 6151112, at *6–7 (S.D.N.Y. Oct. 20, 2020) (reducing the Firm's requested billable hours by 50% even where the court found that DOE's tactics "drove up the number of hours billed"), *report and recommendation adopted as modified*, No. 20 Civ. 1922 (LGS), 2021 WL 100501 (S.D.N.Y. Jan. 12, 2021), *modified*, No. 20 Civ. 1922 (LGS), 2021 WL 536080 (S.D.N.Y. Jan. 25, 2021), *aff'd*, No. 21-240-CV, 2022 WL 1409578 (2d Cir. May 4, 2022).

In any event, even assuming that the DOE unreasonably protracted the dispute, that conclusion "would not entitle [plaintiff's counsel] to more than a reasonable attorney's fee

calculated based on the standards well established by the Supreme Court and in this Circuit."
*M.H.*, 2021 WL 4804031, at \*25.  "That conclusion follows from the plain language of the
statute and established principles of statutory interpretation."  *Id.*  Indeed, "[b]efore one ever
gets to Section 1415(i)(3)(F), the statute instructs that the Court's discretion is limited to
awarding a 'reasonable' attorney's fee and that the fee must be based on rates prevailing in the
community in which the action or proceeding arose[.]"  *K.O. v. New York City Dep't of Educ.*,
No. 20 Civ. 10277 (LJL), 2022 WL 1689760, at \*14 (S.D.N.Y. May 26, 2022) (internal citation
omitted).  Subparagraph (G), which holds that the mandatory reductions provided in
subparagraph (F) are not applicable where the court finds that the educational agency
unreasonably protracted the final resolution of the action, does not mandate that the district
court abandon its discretion to ensure that fees are reasonable.  *Id.*  At best, a showing of
unreasonable protraction on the part of the DOE "might justify the reasonableness of some of
the hours worked by counsel and the paralegals.  However, it would not entitle [plaintiff's
counsel] to more than a reasonable attorney's fee[.]"  *M.H.*, 2021 WL 4804031, at \*25.

    The Firm has not shown that it was "forced . . . to engage in what should have been
unnecessary work."  *Id.*  Accordingly, the reasonableness of the hours worked by counsel and
paralegals on this case will be evaluated independently of M.M.'s unreasonable protraction
argument.

    **B.  Reasonable Rate**

    The Firm seeks a total of $72,009.23 in overall fees, costs, and expenses.  This figure
includes a total of $46,431.73 for the administrative proceeding in addition to $25,577.50 in
connection with this federal action.[4]  M.M. requests an hourly rate of $550 for senior attorneys
Andrew K. Cuddy and Jason Sterne; $450 for attorney Kevin Mendillo; $425 for associate

---

[4] To determine the total fee that the Firm is owed, the Court relies on the billing statements filed by M.M., Doc. 17-
4 and Doc. 30-1 at 1, and the declaration filed by A. Cuddy, Doc. 17 ¶ 63, which attests that the Firm paid a $400
filing fee that was not mentioned in the billing statements.

attorney Justin Coretti;[5] $375 for associate attorneys Britton H. Bouchard and John F. Cuddy; $225 for office administrator and senior paralegal Shobna Cuddy; $225 for paralegal Cailin O'Donnell; and $125 for paralegals Sarah Woodard, Allison Bunnell, and Amanda Pinchak.[6] Doc. 20 at 13–15; Doc. 17-4; Doc. 30-1.  The Court finds these rates unreasonable.

In opposition, the DOE asserts that the awards requested here significantly exceed prevailing rates for similar cases, and cites to various similar IDEA cases where courts in this district have awarded hourly rates below those requested by the Firm.  The DOE argues that the rates should be set no higher than $350 per hour for A. Cuddy and Sterne, $275 per hour for Mendillo, $250 per hour for Coretti, $200 per hour for Bouchard and J. Cuddy,[7] and $100 per hour for the paralegals.  Doc. 25 at 3.

The prevailing market rate for experienced, special-education attorneys in the New York area in 2018 was between $350 and $475 per hour.  *R.G. v. New York City Dep't of Educ.*, No. 18 Civ. 6851 (VEC), 2019 WL 4735050, at *2 (S.D.N.Y Sept. 26, 2019) (awarding $350 rates to senior attorneys who have practiced IDEA law since 2005).  Rates for the Firm from 2019 to 2022 specifically, as demonstrated by the cases cited below, range from $350 to $550 per hour.  Courts in this district have recognized that the passage of time may justify somewhat higher rates for the same type of work performed by the same senior attorneys.  *See, e.g.*, *M.H.*, 2021 WL 4804031, at *12 ("The Court may consider the passage of time, [and] the increase in fees that may come with such passage of time.");  *C.D. v. Minisink Valley Cent. Sch. Dist.*, No. 17 Civ. 7632 (PAE), 2018 WL 3769972, at *6 (S.D.N.Y. Aug. 9, 2018).  The Firm argues,

---

[5] M.M. also requests an hourly rate of $212.50 for the 12.5 hours Justin Coretti spent traveling for the underlying administrative action.  Doc. 17-4.

[6] While the Firm asserts that the typical hourly rate for its paralegals is $225 per hour, it requests that the Court award an hourly rate of $125 to Sarah Woodard, Allison Bunnell, and Amanda Pinchak.  Doc. 20 at 14.  Paralegals ChinaAnn Reeve, Burhan Meghezzi, and Emma Bianco are listed in the billing statements submitted by M.M., Doc. 17-4 and Doc. 30-1, but are not mentioned in M.M.'s motion.  *See* Doc. 20.  The Court will presume that the requested rate for Reeve, Meghezzi, and Bianco is also $125 per hour.

[7] The DOE did not specifically set a requested rate for J. Cuddy, as he was only included in an updated billing statement filed by M.M. after the DOE's opposition memo, Doc. 25, was already filed.  *See* Doc. 30-1.  The Court assumes that the DOE would request the same hourly rate for Bouchard and J. Cuddy, as they are both lower level associates.

however, that the rates awarded to its attorneys have stagnated in recent years, and asserts that the passage of time justifies that it be awarded higher rates going forward. *See* Doc. 20 at 16–19.

The determination of appropriate rates for the Firm's attorneys "is well trodden ground in this District." *K.O.*, 2022 WL 1689760, at *9. Indeed, the Firm has brought no less than twenty federal fees cases in this district since 2018, litigating the rates that they assert they are entitled to charge. Ten of those cases have been brought in 2022 alone. Describing a "current stalemate" between the Firm and the DOE, Judge Liman notes that both parties have adopted a "Manichean" view of the IDEA administrative process that has led the Firm to repeatedly request "aspirational hourly rates that no court has awarded," while the DOE, in turn, has elected to play "hardball" and refuse settlement.[8] *D.P. v. New York City Dep't of Educ.*, 21 Civ. 27 (KPF), 2022 WL 103536, at *6 (S.D.N.Y. Jan. 10, 2022). Under these circumstances, the rates awarded to the Firm have varied depending on the facts of each case; for A. Cuddy, the hourly rate determined to be reasonable has ranged from $350 an hour to $550 an hour at the high end. *K.O.*, 2022 WL 1689760, at *9. The Firm has been awarded its requested rate of $550 an hour for A. Cuddy in only one case, however. *Y.G. v. New York City Dep't of Educ.*, No. 21 Civ. 641 (AKH), 2022 WL 1046465, at *2 (S.D.N.Y. Apr. 7, 2022). In other decisions issued in 2022, A. Cuddy has generally received an hourly rate between $360 and $420 per hour. *See K.O.*, 2022 WL 1689760, at *9; *R.P. v. New York City Dep't of Educ.*, No. 21 Civ. 4054 (JMF), 2022 WL 1239860, at *4 (S.D.N.Y. Apr. 27, 2022); *N.G.B. v. New York City Dep't of Educ.*, No. 20 Civ. 6571 (JGK), 2022 WL 800855, at *3 (S.D.N.Y. Mar. 16, 2022); *H.A.*, 2022 WL 580772, at *6; *H.W. v. New York City Dep't of Educ.*, No. 20 Civ. 10591 (RA), 2022

---

[8] In multiple cases where the Firm and the DOE were able to reach a settlement, the DOE has failed to make a timely payment to satisfy the terms of the settlement agreement. *See C.S. v. New York City Dep't of Educ.*, No. 19 Civ. 11419 (CM) (GWG), 2021 WL 1851366 (S.D.N.Y. Apr. 8, 2021) (ordering that the DOE pay interest to the Firm after it was late making payment to satisfy a settlement agreement the parties had reached to resolve a federal fees lawsuit); *D.M. v. New York City Dep't of Educ.*, No. 19 Civ. 1477 (ER), 2021 WL 4441508 (S.D.N.Y. Sept. 28, 2021) (same).

WL 541347, at *3 (S.D.N.Y. Feb. 23, 2022); *L.L. v. New York City Dep't of Educ.*, No. 20 Civ. 2515 (JPO), 2022 WL 392912, at *3 (S.D.N.Y. Feb. 9, 2022); *S.H. v. New York City Dep't of Educ.*, No. 21 Civ. 4967 (LJL), 2022 WL 254070, at *6 (S.D.N.Y. Jan. 26, 2022); *D.P.*, 2022 WL 103536, at *15; *V.W.*, 2022 WL 37052, at *6.  Sterne has received similar hourly rates in recent cases, with awards generally ranging between $360 an hour, *L.L*, 2022 WL 392912, at *3, and $420 an hour, *M.H.*, 2021 WL 4804031, at *13.  For other individuals within the Firm, past decisions contain a range of reasonable rates for midlevel and junior associates, from $400 for an attorney with approximately four years of experience, to $300 or $280 in other cases, to $200 at the low end.  *See, e.g.*, *Y.G.*, 2022 WL 1046465; *L.L*, 2022 WL 392912; *M.H.*, 2021 WL 4804031.  Paralegals, depending on their particular attributes, have generally received an hourly rate between $100 and $125.  *R.G.*, 2019 WL 4735050, at *3 (collecting cases).

In 2021, there were six attorneys' fees actions in this district involving the Firm, and none awarded over $420 per hour for A. Cuddy.  *See A.G. v. New York City Dep't of Educ.*, No. 20 Civ. 7577 (LJL), 2021 WL 4896227, at *6 (S.D.N.Y. Oct. 19, 2021) (awarding $420); *M.H.*, 2021 WL 4804031, at *13 (awarding $420); *J.R. v. New York City Dep't of Educ.*, No. 19 Civ. 11783 (RA), 2021 WL 3406370, at *4 (S.D.N.Y. Aug. 4, 2021) (awarding $350); *M.D.*, 2021 WL 3030053, at *3 (awarding $375); *H.C.*, 2021 WL 2471195, at *6 (awarding $360); *S.J.*, 2021 WL 100501, at *4 (awarding $360), *modified*, 2021 WL 536080, *aff'd*, 2022 WL 1409578.  In four cases from 2018 and 2019, the Firm was awarded no more than $400 per hour.  *See R.G.*, 2019 WL 4735050, at *2 (awarding $350); *C.B. v. New York City Dep't of Educ.*, No. 18 Civ. 7337 (CM), 2019 WL 3162177, at *6 (S.D.N.Y. July 2, 2019) (awarding $400); *M.D. v. New York City Dep't of Educ.*, No. 17 Civ. 2417 (JMF), 2018 WL 4386086, at *3 (S.D.N.Y. Sept. 14, 2018) (awarding $360); *C.D.*, 2018 WL 3769972, at *6 (awarding $400).

In support of its contention that the requested hourly rates are appropriate, M.M. cites to one case where the Firm was awarded those rates.  *Y.G.*, 2022 WL 1046465.  In *Y.G.*, Judge Hellerstein acknowledged that the Firm's requested rates were "higher than other district courts

have allowed." *Id.* at *2.  However, emphasizing the crucial importance of adequately incentivizing skilled attorneys to take IDEA fee-shifting cases, Judge Hellerstein determined that the Firm's requested rates were reasonable. *Id.*  The award of relatively high hourly rates in *Y.G.* was also premised on the fact that the underlying administrative proceeding was "heavily contested and required the skill of an experienced IDEA litigator to prevail, as there were multiple days of hearings and five hearings on the merits." *Id.*  Here, the DOE argues that the underlying proceeding was not heavily contested, involving only two hearings on the merits and lasting a total of one hour and 18 minutes to complete.  Doc. 25 at 2.  Although an "essentially uncontested" hearing would generally call for lower hourly rates, *C.B.*, 2019 WL 3162177, at *8, the failure of the DOE to alert M.M. that the hearings would not be seriously contested weighs in favor of M.M.'s argument; without notice that the hearings would be uncontested until the day of the hearing, M.M. had no way of knowing that its preparation for the hearings would prove unnecessary.  Where "[t]he DOE's own conduct required more skill and labor by [plaintiff's] attorneys," the award of a lower rate is not appropriate. *S.P. v. New York City Dep't of Educ.*, No. 20 Civ. 8380 (ALC) (SN), 2022 WL 109266, at *5 (S.D.N.Y. Jan. 11, 2022) (finding that the hearing was not "uncontested" when the DOE made the decision not to cross-examine witnesses "only the day before the hearing"); *see also A.G.*, 2021 WL 4896227 (holding that plaintiff should not be penalized for the DOE's failure to contest when plaintiff only learned that the DOE would not put on an affirmative case on the day of the hearing).  Thus, the DOE's argument that the "minimally contested" nature of the hearing should result in a fee reduction is without merit, since it failed to alert M.M. of its decision to not contest the matter until after M.M. had already prepared for the hearing. *See* Doc. 25 at 9.  On the other hand, the undisputed evidence does indicate that the underlying administrative proceedings in this matter were likely not as "heavily contested" as the proceedings in *Y.G.*; as the parties had already reached a partial resolution agreement prior to the hearing, Doc. 16-2, the issues at stake in the hearing were limited. *See H.A.*, 2022 WL 580772, at *8 (finding that the underlying

litigation was relatively straightforward since the DOE only objected to an aspect of plaintiff's remedial plan and did not contest liability).

Moreover, *Y.G.* is the only case in which the Firm has been awarded its requested hourly rates, which start at $550 per hour for partners. Even in *K.O.*, which was decided after *Y.G.*, Judge Liman found an award of $420 an hour for A. Cuddy and $400 an hour for Sterne to be appropriate. *See K.O.*, 2022 WL 1689760, at *9. The Firm's partners have been awarded similar rates in several other recent cases. *See, e.g.*, *S.H.*, 2022 WL 254070, at *6 (awarding $420 per hour to A. Cuddy and $400 per hour to Sterne); *A.G.*, 2021 WL 4896227, at *6 (same); *M.H.*, 2021 WL 4804031, at *13 (awarding $420 per hour to A. Cuddy and Sterne); *C.B.*, 2019 WL 3162177, at *6 (awarding $400 per hour to A. Cuddy and Sterne); *C.D.*, 2018 WL 3769972, at *6 (same).

Alternatively, M.M. argues that the Court should not look at all to the awards granted in prior cases in this district, and should instead rely exclusively on the evidence it has submitted. In fact, according to M.M., prior case law is *only* instructive where the plaintiff fails to introduce any credible evidence regarding prevailing rates. Doc. 29 at 1. This is not accurate. While it is true that the Court may not rely *solely* on awards in prior cases in setting the rate, *Farbotko*, 433 F.3d at 208, this does not mean that courts may only look to past awards where there is an absence of credible evidence introduced by the fee applicant. Instead, while a court should evaluate the evidence proffered by the parties, it may also consider rates awarded in prior cases, as well as its "familiarity with the rates prevailing in the district." *Id.* Indeed, courts often take "judicial notice of past awards given to the same attorneys as counsel in the current case, particularly for firms active in IDEA-related matters like [the Firm]." *C.B.*, 2019 WL 3162177, at *5 (citations omitted).

To be sure, in determining the appropriate fee award, the Court has looked to similar cases in this district. While the Court has evaluated the evidence proffered by the parties, the documents submitted by M.M. have failed to substantiate the reasonableness of the Firm's

requested fees.[9]  For example, M.M. submitted several years of statistics indicating at what

hourly rates the DOE has settled past attorneys' fees cases.  Doc. 14-1–12.  For each entry, the

list states the firm or attorney's name, their claimed fees, the start and end dates of the case, and

the settlement amount.  The list includes approximately several thousand entries of matters,

ranging from 2009 to 2018.  It includes dozens of different firms, ranging from solo

practitioners to the Firm itself to large firms like Kirkland and Ellis, and details whether the

case settled or had an IHO hearing, the name of the firm, the hourly rate sought and hours

claimed, and the total amount in fees that the firm was given.  None of this data is analyzed or

summarized by M.M. in any depth.  Moreover, the rates predictably vary.  Many entries,

however, do fall within the range of $350 to $500.  Therefore, they are consistent with the rates

typically awarded in similar cases in this district.  M.M. also submitted an agreement between

the New York City Law Department ("Law Department") and Hoguet, Newman, Regal &

Kenny, LLP ("Hoguet") to perform legal services related to DOE cases.  Doc. 17-2.  In the

agreement, the Law Department agreed to pay Hoguet $400 per hour for partners, $300 per hour

for associates, and $100 per hour for paralegals.  *Id*. at 1.  These figures do not substantiate the

reasonableness of the Firm's requested fees; instead, the fees paid by the DOE to Hoguet are

substantially similar to the typical fees awarded to plaintiff's attorneys by courts in this district.

In addition, M.M. submitted retainer agreements with fifteen other clients of the Firm,

which allegedly demonstrate that reasonable clients are willing to pay M.M.'s requested hourly

rates.  Doc. 20 at 21; Docs. 15-2–11.  M.M.'s proposition fails.  The retainer agreements do not

---

[9] The Firm cites to practitioner declarations filed in other lawsuits.  Doc. 20 at 19–20.  Those declarations purportedly "demonstrate the common fee per hour of attorneys and support staff in SDNY." *Id.* at 20.  The Court declines to rely on these materials.  First, in the cases in which those declarations were filed, the courts expressly rejected the probative value of the declarations. *See, e.g., G.T. v. New York City Dep't of Educ.*, No. 18 Civ. 11262 (GDB) (BCM), 2020 WL 1516403, at *4 (S.D.N.Y. Feb. 12, 2020) (finding "the declarations submitted by plaintiff's counsel to be unpersuasive" and noting that "district courts have generally decided not to rely heavily [on such] affidavits, since they may only 'provide isolated examples of billing rates of a few lawyers,' may leave out context that rationalizes the rates billed, and may even list rates that are not in practice ever paid by reasonable, paying clients" (internal quotation marks and citations omitted)); *A.D. v. New York City Dep't of Educ.*, No. 18 Civ. 3347 (VEC), 2019 WL 1292432, at n.4 (S.D.N.Y. Mar. 21, 2019) (finding nothing in the declarations that have been cited in this case by M.M., Doc. 20 at 20, that would justify a higher rate).  Second, courts in this district have determined that these types of affidavits are generally of "limited value." *H.C. v. New York City Dep't of Educ.*, No. 20 Civ. 844 (JLC), 2021 WL 2471195, at n.5 (S.D.N.Y. June 17, 2021).

establish the novelty and difficulty of the questions raised, the level of skill required, any

relevant time limitations imposed by the client, or the results obtained in those cases.

Moreover, of the fifteen retainer agreements, twelve "explicitly did not cover IDEA-related due

process hearings unless the clients signed a separate retainer agreement." *C.B.*, 2019 WL

3162177, at *7 (rejecting the probative value of the retainer agreements submitted by the Firm,

in part because many of the agreements did not involve representation at due process hearings);

*see* Docs. 15-2–3, 15-5–10, 15-11 at 1–4.  Thus, only three of the retainer agreements were

directly relevant to the facts of this case.  Docs. 15-4, 15-11 at 5–15.  Of these three agreements,

the earliest is dated August 3, 2015, Doc. 15-11 at 5, and the latest is dated February 5, 2021.

Doc. 15-4.  Three unrelated matters over the course of six years do not adequately demonstrate

that reasonable clients are willing to pay the rates the Firm has requested.  Moreover, two of

those agreements were purportedly signed by M.M.[10]  Proof that M.M. signed those agreements

does not, in and of itself, establish that a reasonable, paying client would pay those rates.  *See*

*M.H.*, 2021 WL 4804031, at *11 ("The fact that [the plaintiff] may have agreed that [the Firm]

should be paid at a particular rate does not establish that such rate is reasonable.").  Indeed, the

Firm promises in the retainer agreements that, when the client prevails in the administrative

action, the Firm "will make an attempt to recoup legal fees" from the DOE pursuant to the fee

shifting provision of the IDEA.  *See, e.g.*, Doc. 15-11 at 8.  Thus, beyond an initial retainer

payment, *see* Doc. 15-11 at 7, M.M. never actually agreed to pay the Firm's requested rates.

---

[10] On behalf of the Firm, Attorney Adrienne Arkontaky attests that Doc. 15-11 contains the retainer agreements signed by M.M.  Doc. 15 ¶ 34.  That does not appear to be the case, however.  One of the retainer agreements involves a due process hearing for the 2015–2016 school year.  Doc. 15-11 at 5.  In the Complaint, M.M. alleges that the underlying administrative case was pursued in connection with the 2016–2017, 2017–2018, and 2018–2019 school years.  Doc. 1 ¶ 12.  Furthermore, all of the retainer agreements that were purportedly signed by M.M. promise services rendered for a "daughter," Doc. 15-11, while M.M.'s closing brief for the underlying hearing refers to B.M. as M.M.'s "son."  Doc. 16-3 at 2.  In addition, although M.M. provided some relevant resumes in a separate declaration, Doc. 17-4, M.M. attached 14 largely irrelevant resumes to Arkontaky's declaration.  *See* Doc. 15-15.  Only three of those 14 resumes relate to individuals included on the billing statements at issue in this matter.  The other resumes belong to the Firm's employees who did not work on either this case or the underlying administrative proceeding.  In light of the deficiencies evident in its declarations and attached exhibits, it is concerning that the Firm billed over 21 hours in the course of preparing the five declarations it submitted.  Doc. 25 at 3.  That accounts for almost one-third of the time billed in connection with this federal action.  In total, M.M. seeks to claim over $25,000 for its time spent litigating this case.

M.M. did, however, submit other materials that detail the experience, credentials, and typical hourly rates of the Firm's attorneys.  For example, M.M. submitted a declaration from A. Cuddy attesting to his own extensive experience, as well as the unique skill and expertise of the Firm's staff.  Doc. 17.  Bouchard and Coretti, the lead attorneys for this action and the underlying administrative proceeding, respectively, also submitted declarations.  Docs. 16, 18.

After reviewing these materials, considering the *Johnson* factors, and looking to similar judicial decisions within this district, the Court is compelled to settle on a fee award in between both parties' requests.  While several of the *Johnson* factors weigh in the Firm's favor, other factors do not.  For example, it weighs in favor of M.M.'s counsel that this case was taken on a contingency basis, and that the Firm was successful in obtaining a satisfactory result for M.M.  On the other hand, there is no evidence that taking this case prevented the Firm from accepting other cases.  Moreover, the partial resolution agreement between M.M. and the DOE indicates that the issues left to be litigated were not especially novel or difficult.  And finally, awards in similar cases are significantly lower than the rates requested by the Firm.

Balancing these attorneys' significant experience, previously-awarded rates, and the relative lack of complexity in this case, the Court finds that an award of $420 for A. Cuddy is appropriate.  A. Cuddy has practiced for over 20 years in the field of special education law; he is a published author; and he is the founder and principal of the firm, which has offices in several different cities.  Doc. 15-15 at 3.  Sterne likewise has over 20 years of professional experience as an attorney, including approximately 17 years with the Firm.  He specializes in special education law, and has substantial experience providing legal representation in IDEA administrative hearings.  *Id*.  Based on this expertise, Sterne will also be awarded an hourly rate of $420.

The Court finds that an award of $300 per hour for Coretti and Mendillo is appropriate.  Coretti has almost 10 years of experience as an attorney, including almost seven years at the Firm.  He has represented parents in over 100 administrative due process hearings, and has taught courses on special education law.  Doc. 16 ¶ 5.  Mendillo has practiced in the area of

special education for over seven years, and has litigated approximately 100 administrative hearings and nearly 30 federal fee cases.  Doc. 17 ¶ 13.  Mendillo has been awarded this rate in other recent cases.  *See, e.g.*, *H.C.*, 2021 WL 2471195, at *5 (awarding a rate of $300 per hour to Mendillo).

Bouchard graduated from Syracuse University College of Law in 2019, and was admitted to the bar for the State of New York in June 2020.  Doc. 18 ¶¶ 7–8.  He will be awarded an hourly rate of $225.  John F. Cuddy, for whom no significant evidence was introduced regarding his qualifications or experience, will be awarded an hourly rate of $200.

All paralegals will receive an hourly rate of $125.  This is consistent with the hourly rates broadly recognized for paralegals within this district.  *R.P.*, 2022 WL 1239860, at *4 (citing *R.G.*, 2019 WL 4735050, at *3) (awarding $100 and $125 to the Firm's paralegals).

### C.  Reasonable Hours

The Court may reduce the number of hours for which recovery is granted if it finds it cannot credit the prevailing party's "representations that a certain number of hours were usefully and reasonably expended."  *Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994).  Here, the Firm's billed hours are greater than what the Court would expect an attorney to reasonably spend on this case.[11]

The DOE alleges that the hours billed by the Firm demonstrate a failure to exercise billing judgment and are unsupported by the record.  Doc. 25 at 13.  Counsel billed 95.9 hours in the administrative action and 59.9 hours in the federal action.  Doc. 17-4; Doc. 30-1.[12]  Of the 95.9 hours billed in the administrative proceeding, 19 hours were spent preparing a due process hearing request, which the DOE emphasizes as evidence that the Firm engaged in excessive billing practices.  Doc. 25 at 15.  The record supports this argument.  Based on the billing

---

[11] The Court also notes that in each of the aforementioned cases it cites involving the Firm, the hours were reduced to some extent.  Even in *Y.G.*, 2022 WL 1046465, at *3, Judge Hellerstein reduced the hours billed as travel time by approximately 70%.

[12] These figures refer only to hours billed by the Firm's attorneys, and do not include the nearly 30 hours the Firm's paralegals billed for the administrative action and the 6.6 hours billed by paralegals in this federal action.  Doc. 17-4; Doc. 30-1.

summary sheet, it appears that this request went through multiple in-depth stages of review, despite being a relatively simple document that the Firm's attorneys have a great deal of experience drafting. *See* Doc. 17-4 at 5–11.  In contrast, in *C.B.*, the Firm was awarded fees for only 21.1 hours spent preparing an extensive 19-page request. *C.B.*, 2019 WL 3162177, at *10; *see also L.L.*, 2022 WL 392912, at *4 (reducing the Firm's time spent working on a nine-page request from over 25 hours to nine hours).  In addition, the Firm spent another nine hours drafting a closing brief after the conclusion of the two administrative hearings. Doc. 25 at 18. Significant portions of the closing brief merely recite the procedural history of the case and restate facts already articulated in the earlier due process hearing request. Doc. 16-3. Moreover, at the beginning of the first day of the hearing, the DOE had informed M.M. that it would not present a case in its defense. Doc. 25 at 9; Doc. 20 at 13.  It is unclear, therefore, why it was necessary for the Firm to spend nine hours drafting a closing brief that merely recited the facts and arguments it had already presented on the record.

The DOE argues that the Firm has also engaged in excessive billing practices in this federal action.  Of the 59.9 hours billed for the federal action, over 21 were spent preparing the five separate declarations that, as discussed above, were at times either duplicative or irrelevant to the issues presented. *See supra* n.10; Docs. 14, 15.  Thus, it is unclear why the Firm would need to spend so many hours gathering, reviewing, and submitting these declarations. Accordingly, the Court agrees with the DOE that the 59.9 hours billed should be reduced. *See V.W.*, 2022 WL 37052, at *6 (holding 46.7 hours billed at the federal level was reasonable); *B.B. v. New York City Dep't of Educ.*, No. 17 Civ. 4255 (VEC) (SDA), 2018 WL 1229732, at *3 (S.D.N.Y. Mar. 8, 2018) (finding 40 hours appropriate for litigating a standard IDEA fee petition); *but see S.J.*, 2020 WL 6151112, at *6–7 (holding 56 hours for federal IDEA action reasonable after applying a 50% reduction), *report and recommendation adopted as modified*, 2021 WL 100501, *modified*, 2021 WL 536080, *aff'd*, 2022 WL 1409578.

"Rather than engage in a painstaking line-item review of each billing entry, in calculating an appropriate reduction of compensable hours '[a] district court may exercise its

discretion and use a percentage deduction as a practical means of trimming fat from a fee application.'" *M.D.*, 2018 WL 4386086, at *4 (quoting *McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Tr. Fund*, 450 F.3d 91, 96 (2d Cir. 2006)).  Courts in this district have applied this strategy numerous times, generally reducing excessive fees by 20% to 50%.  *See, e.g.*, *V.W.*, 2022 WL 37052, at *6 (reducing 86.6 hours spent in a relatively uncomplex administrative action by 20%); *see also J.R.*, 2021 WL 3406370, at *4–5 (reducing 110.6 hours billed in a comparable administrative action by 20%).

"Notably, recent cases in this district have reduced the hours that [the Firm] spent litigating attorney's fees between twenty-five percent to fifty percent."  *R.P.*, 2022 WL 1239860, at *7.  Where a court determines that attorneys have spent excessive time on relatively straightforward legal tasks, it is appropriate to reduce the award by a significant percentage amount.  *See, e.g.*, *L.L.*, 2022 WL 392912, at *5 (reducing the Firm's hours spent on a similar summary judgment motion by roughly half); *J.R.*, 2021 WL 3406370, at *6 (reducing the Firm's time by 25% for its straightforward motion for attorney's fees); *M.D.*, 2021 WL 3030053, at *6 (reducing the Firm's 76.2 hours spent on federal litigation by 50% due to the "low degree of complexity"); *R.G.*, 2019 WL 4735050, at *5 (reducing the Firm's hours spent litigating attorney's fees by approximately 26%, because the brief "discusse[d] no novel questions and contain[ed] approximately five pages [out of 30] of boilerplate language").

In light of the straightforward nature of this action, the Court concludes that a 25% reduction is reasonable.  For the underlying administrative action, the Court concludes that a 20% reduction is reasonable.  These reductions are considerable and reflect the Court's view that some of the hours billed by the Firm were excessive.

### D.  Costs

The Firm requests compensation for expenses totaling $1,762.98.  This includes $400 for filing this lawsuit,[13] $74 for fax, $385.16 for lodging, $51.46 for meals, $362.50 for mileage, $70 for parking, $9.36 for postage, $396 for printing, and $14.50 for tolls.  Doc. 17-4 at 1.

The billing statement submitted by the Firm for the underlying administrative action shows that it charged 50 cents per page for printing.  *See, e.g.*, Doc. 17-4 at 43.  This figure will be reduced to 10 cents per page.  This is consistent with prevailing practices in this district.  *See, e.g.*, *R.G.*, 2019 WL 4735050, at *6 (reducing printing costs from 50 cents to 10 cents per page).

M.M. may not charge for faxing costs.  *See R.P.*, 2022 WL 1239860, at *7 ("[T]he Court finds, in line with other courts in this District, that the Firm's request for fax reimbursement is unreasonable"); *D.P.*, 2022 WL 103536, at *15 (same).  Additionally, "[a]n award of lodging expenses is not warranted."  *M.D.*, 2021 WL 3030053, at *6 (citing *C.D.*, 2018 WL 3769972, at *13).  The costs associated with meals will be reduced by 50%.  *See C.D.*, 2018 WL 3769972, at *13 (reducing costs for meals by 70%).  Mileage costs will also be reduced by 50%.  *Id.* (reducing mileage costs by 70%).

For his time spent traveling, Coretti may only charge $150 per hour, and is limited to billing for one hour of travel time each way for his trips.  The Court notes that in *M.D.*, Judge Schofield completely disallowed travel awards, since "it is doubtful that a reasonable client would retain an Auburn or Ithaca attorney over a New York City attorney if it meant paying New York City rates and an additional five hours in billable time for each trip."  2021 WL 3030053, at *5 (quoting *K.F. v. New York City Dep't of Educ.*, No. 10 Civ. 5465 (PKC), 2011 WL 3586142, at *6 (S.D.N.Y. Aug. 10, 2011)).  In other cases, however, lawyers from the Firm have been allowed to bill up to one hour each way for their trips.  *See J.R.*, 2021 WL 3406370, at *6 (allowing Coretti to bill for no more than one hour of travel time each way for trips to

---

[13] *See supra* note 4.

New York City); *see also S.J.*, 2021 WL 100501 (reducing travel time billed by the Firm), *modified*, 2021 WL 536080, *aff'd*, 2022 WL 1409578.  The Court will grant Coretti one hour of travel each way, for a total of two hours.[14]

Accordingly, the Firm may bill $400 for filing this lawsuit, $25.73 for meals, $181.25 for mileage, $70 for parking, $9.36 for postage, $79.20 for printing, and $14.50 for tolls.  This results in total costs of $780.04.

## IV.   CONCLUSION

The Court grants M.M.'s motion for attorneys' fees and costs with the modifications to hourly rates, billable hours, and expenses detailed above.  Thus, for the underlying administrative proceedings, the hours and rates for each attorney and paralegal result in the following fees:

| Name | Rate | Hours | Total |
|------|------|-------|-------|
| Andrew Cuddy, Esq. | $420 | 2 | $840 |
| Jason Sterne, Esq. | $420 | 1 | $420 |
| Justin Coretti, Esq. | $300 | 80.4 | $24,120 |
| Justin Coretti, Travel | $150 | 4 | $600 |
| Allison Bunnell | $125 | 3 | $375 |
| Amanda Pinchak | $125 | 11.9 | $1,487.50 |
| Burhan Meghezzi | $125 | 2.5 | $312.50 |
| Cailin O'Donnell | $125 | 9.4 | $1,175 |
| Emma Bianco | $125 | 0.2 | $25 |
| Shobna Cuddy | $125 | 1.5 | $187.50 |
| Sarah Woodard | $125 | 0.8 | $100 |

The hours and rates for each attorney and paralegal in connection with this federal action result in the following fees:

---

[14] Coretti traveled to New York City on two occasions, once for each hearing.  Doc. 16 ¶ 37.  He therefore may only bill four hours for travel.

| Name | Rate | Hours | Total |
|------|------|-------|-------|
| Andrew Cuddy, Esq. | $420 | 5.5 | $2,310 |
| Britton Bouchard, Esq. | $225 | 49.1 | $11,047.50 |
| Justin Coretti, Esq. | $300 | 4 | $1,200 |
| Kevin Mendillo, Esq. | $300 | 0.9 | $270 |
| John Cuddy, Esq. | $200 | 0.4 | $80 |
| Cailin O'Donnell | $125 | 2.3 | $287.50 |
| Shobna Cuddy | $125 | 3.1 | $387.50 |
| ChinaAnn Reeve | $125 | 1.2 | $150 |

Therefore, prior to any discretionary reductions, M.M. is due $29,642.50 for the underlying administrative action and $15,732.50 for this federal action.  After reductions, M.M. is due $23,714 for the underlying administrative action and $11,799.38 for this federal fees case.  As stated above, for costs, the Firm may bill $400 for filing this lawsuit, $25.73 for meals, $181.25 for mileage, $70 for parking, $9.36 for postage, $79.20 for printing, and $14.50 for tolls, which amount to total costs of $780.04.

Accordingly, M.M. is entitled to a combined total of $36,293.42.  The Clerk of Court is respectfully directed to terminate the motion, Doc. 13, enter judgment, and close the case.

It is SO ORDERED.

Dated:   August 2, 2022
        New York, New York

_____
                Edgardo Ramos, U.S.D.J.